**Rozanne HUNDLEY, Appellant,**

**v.**

**The MATTHEWS HINSMAN COMPANY, Employer, and American Insurance Company, Insurer, Respondents.**

No. 50267.

Supreme Court of Missouri,

In Banc.

June 8, 1964.

Claude L. Schenck, R. A. Kelpe, Kansas City, Walter Klamm, Kansas City, Kan., for appellant.

David H. Clark, David W. Shinn, Kansas City (Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel), for respondents The Matthews Hinsman Co., Employer and American Insurance Co., Insurer.

EAGER, Chief Justice.

This case came here by certification of the Kansas City Court of Appeals for a "re-examination of the applicable law," although that court reversed the judgment of the Circuit Court. That opinion appears at 368 S.W.2d 528. The case involves a Workmen's Compensation claim and the question here is solely one of limitations. The referee and the Industrial Commission denied compensation and the Circuit Court affirmed.

The facts appear in detail in the opinion of the Court of Appeals, but we digest here those necessary to an understanding of the issue. Rozanne Hundley, an employee of Matthews Hinsman Company, slipped on ice in the entranceway of her employer's premises in Kansas City on the morning of January 23, 1959, and sustained a hard fall. She testified: "Well, I hurt my back. I mean, it hurt, because I fell so hard and so flat * * *." She also stated that the lower part of her back struck the concrete floor; all the evidence indicated that the injury was to the low back and that her pain was there. On the same morning she was hospitalized, X-rays were taken, and thereafter heat was applied to her low back area with deep heat therapy. In about one week she was released from the hospital, and a corset-type brace was prescribed by her physician; she wore this for about three months. She made occasional office visits to the doctor until the first part of March. She returned to part-time work about two weeks after the fall and later resumed her full duties. For a time she experienced some discomfort, but her condition was gradually "getting better." She was paid $51.90 compensation (voluntary) and the compensation insurer also paid the doctor's bill of $43, $188.75 to the hospital and $8.30 for the brace.

A Report of Injury, dated January 26, 1959, but not filed until October 21, 1960, recited the fall, stated that there was temporary disability, that there were no fractures,

and that "evidently it must have been a sprain."

In January, 1960, the claimant began to have occasional "catches" in her back which continued intermittently, and one foot began tingling; from March to June or July she went to two different chiropractors several times, chiefly because of a stiff neck, but they also "helped" her foot. In July, 1960, her right hip and upper leg began hurting; on July 25 she could hardly get out of bed because of her back; she had worked rather regularly up to that time, but she and her family had driven to South Dakota earlier in July on their vacation. Her family physician was called, she was hospitalized, and she was examined by an orthopedic surgeon. On July 28 one large herniated disc and one smaller one were removed, one being the disc between the last lumbar vertebrae and the sacrum and the other the disc between lumbar vertebrae four and five. That portion of the spine was fused with a bone graft. About October 3–4, she returned to work, and for a time she wore a new brace. Her operating surgeon gave the opinion that the injury to the discs resulted from the accident of January 23, 1959, but that thereafter the symptoms had subsided and there had been a period of remission. He rated the claimant as disabled "in the neighborhood of 30 per cent of the body as a whole" because of the fusion.

The claim for compensation was filed on October 5, 1960; the accident upon which it was based was the fall already described. Claimant stated that the parts injured were: "Back, Spine, Pelvis, legs and central nervous system" and added that there was permanent injury; she further stated that the fall caused "compensable injuries which were not discernable until on or about July 25, 1960." The answer denied certain of the allegations and alleged that the claim was barred by § 287.430.[1] After a hearing, the referee awarded no compensation and specifically found " * * * from all the credible evidence that the claim for com-

1. All statutory references are to RSMo 1959 and V.A.M.S.

pensation filed by the employee was not filed within one year after the date of the injury, nor was said claim for compensation filed within one year after the furnishing of medical treatment or the payment therefor. I further find that the claim for compensation was not filed by said employee within one year after the date when it became reasonably discoverable and apparent that a compensable injury had been sustained by said employee." Upon review, the Industrial Commission found that the award was supported by competent and substantial evidence, adopted the findings of fact, rulings and conclusions of law of the referee, and affirmed his award of no compensation. It also noted that it found to be controlling two of the cases which we shall discuss later (Crites and Conn). On appeal to the Circuit Court the final award was affirmed. As already indicated, the Court of Appeals reversed this judgment but certified the case here.

Section 287.430 reads, in so far as pertinent, as follows: "No proceedings for compensation under this chapter shall be maintained unless a claim therefor be filed with the commission within one year after the injury or death, or in case payments have been made on account of the injury or death, within one year from the date of the last payment." The sole question at issue here is whether this claim is barred by limitations. The essential contentions of the claimant are: that two separate injuries resulted from the fall,—one, discoverable and minor,—the other, latent and not discoverable until at least some time after January, 1960; that the claim for the latent injury was filed within one year from the time it was reasonably discoverable and apparent; that the statute is not a bar, because *that injury* must be reasonably discoverable and identifiable, and that here not even the physician recognized the existence of a disc injury following her fall.

We shall look first at the Missouri cases which have laid down the guidelines in somewhat analogous situations. In Wheeler v. Missouri Pac. RR. Co., 328 Mo. 888, 42 S.W.2d 579, the claimant's eye had been cut by a foreign substance; he was treated by the employer's doctor and the eye bandaged for about a month; when the bandage was removed his vision in that eye was "cloudy" and the condition worsened until at the end of ninety days the vision in the eye was practically gone. No claim was filed until two years after the accident. While there was some possible question as to the cause of the blindness, the case was decided on the question of limitations. On this subject the Court adopted and quoted from the opinion of the Kansas City Court of Appeals (from which the case had been certified). It was thus held: that the statute begins to run from the time when it appears that a compensable injury has been sustained, and that nothing in the act indicates that the running of the statute should be delayed until the most serious disability is ascertainable. Thus, the Court said in part, quoting, 42 S.W.2d loc. cit. 582: "'We think there is no question but that in cases where latent injuries are involved the claim must be filed within six months from the time it becomes reasonably discoverable and apparent that *a* compensable injury has been sustained. * * * Our interpretation of the term "injury" as used in section 39 of the act, of course, would not have affected claimant's right to compensation for the complete loss of the sight of his eye, had he filed his claim for a less disability or injury within six months after he received a compensable injury, for section 42 of the act empowers the commission to change an award. The purpose of the Legislature as disclosed by the act to our minds plainly shows that it was its intention to provide that the claim should be filed within six months after the receipt of *a* compensable injury by the employee and, should it transpire thereafter that the injury received has developed into a more serious injury compensable in a different manner, the commission should change the award, if any, previously made. There is no question but that claimant received a compensable injury at the time of the occurrence of the acci-

dent in this case.'" The Court noted that the claimant had been forced to quit work, that he was entitled to and received medical aid, and that he was certainly entitled to compensation for temporary total disability.

In the following cases our Courts of Appeals have similarly announced the principle that the statutory period of limitations begins to run from the date when it becomes reasonably discoverable or apparent that a compensable injury has been sustained. Dees v. Mississippi River Fuel Corp., Mo. App., 192 S.W.2d 635; Crites v. Missouri Dry Dock & Repair Co., Mo.App , 348 S.W. 2d 621 (where, however, a fact finding of the Commission in favor of the claimant was sustained); Conn v. Chestnut Street Realty Co., 235 Mo.App. 309, 133 S.W.2d 1056; Young v. Management & Engineering Corp., Mo.App., 45 S.W.2d 927; Bridges v. Fruin-Colnon Const. Co., Mo.App., 52 S.W.2d 582; Cleveland v. Laclede Christy Clay Products Co., Mo.App., 129 S.W.2d 12. In three of these cases, Dees, Crites, Conn, it was also held that the determination of the date when it was reasonably discoverable that a compensable injury had been sustained was a question of fact. In Crites, the Court added that such a finding could not be set aside unless clearly contrary to the overwhelming weight of the evidence. In Dees, supra, the Court also said, at 192 S.W. 2d loc. cit. 642: "A compensable injury is one which disables the employee either totally or partially from the performance of his work, or requires medical or surgical treatment, and if that condition is coeval with the accident then the injury is coeval with the accident even though its exact nature may not be definitely fixed until a later time and in such case the one year limitation begins to run from the date of the accident." See also: Conn, Bridges and Cleveland, supra. We think it entirely impractical to review here the facts of the various cases which we have thus cited.

In the opinion of the Court of Appeals it seems to be assumed that the original injury was merely a "sprained back." By way of avoidance of the principle declared in the Missouri cases, the Court adopted one announced by Mr. Larson in his text (2 Larson, Workmen's Compensation Law, § 78.44, pp. 274–275) to the effect that where there have been voluntary payments and the initial disability has ended, there is no "reasonable occasion" to file a claim until further disability develops; also, that the case thus becomes merely a "latent injury situation," because the making of voluntary payments "cancels out" the initial disability. The discussion of Mr. Larson was concentrated in part upon a criticism of the case of Kobilkin v. Pillsbury (CA 9), 103 F.2d 667, aff. by an equally divided court, 309 U.S. 619, 60 S.Ct. 465, 84 L.Ed. 983. The author cites no authority for his specific views, except in so far as he cites the general latent injury cases, and in that section (78.41, p. 261) he refers to the fact that most courts have, under statutes running from the time of "injury" (such as ours), seen fit to suspend the running of the statute "until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." (Italics ours.) There is thus no substantial difference between the author's stated "latent injury" rule and the rule of our cases. In criticizing Kobilkin, he apparently seeks to apply his rule to a situation such as ours, although this would appear to be excluded by his own statement in § 78.41. He accomplishes this feat by the mere statement that the voluntary payment *"cancels out"* the knowledge of the initial disability. It may be that there is logic in Mr. Larson's argument but, if so, the remedy lies with the legislature, even on his own expressed interpretation of the theory of "latent injury," which also coincides specifically with the theory of our own cases.

In Kobilkin v. Pillsbury, supra, the claimant had sustained a bad bruise when a bag of sugar fell on his shoulder. He was wholly disabled for three weeks and was paid voluntary compensation. After that, although he had some impairment, he worked for approximately a year and a half; then, severe pain developed and it was found that

there had been a separation of the bones in his shoulder, requiring an operation. A claim filed thereafter was held to be out of time under the federal statute which required the filing of a claim "within one year after the injury" (or last voluntary payment). That claimant contended, as does ours, that the Court should recognize two separate injuries (one external and one internal) and that the more serious one was not discoverable until much later. The Court of Appeals there said, in part, at 103 F.2d, loc. cit. 669–670: "Decisions arising under statutory provisions analogous to those of the federal act generally hold that the date of injury, and not the subsequent date when incapacity develops, is the one from which the time limitation must be reckoned. * * * The terms 'injury' and 'disability', separately defined in the statute, are not synonymous. It has not been suggested that the injury from which appellant suffers is an occupational disease. Admittedly, it is an accidental injury arising in the course of employment. It was inflicted at the time of the accident, not when its full extent was first noted at the later time. The trauma in fact resulted in an immediate though temporary disability for which appellant was paid compensation. The circumstance that appellant again became disabled a year and a half later, and the more serious nature of the injury was then for the first time recognized, does not change the situation. The claim was not filed until more than a year after the occurrence of the injury and more than a year after the last payment of compensation. Under the plain terms of § 13(a) of the statute the claim is barred. If we turn to § 22 and assume a change of condition we again encounter the statutory bar.

"It was the manifest Congressional intent to deny compensation in all cases of disability arising from accidental injury unless claim is filed within the time limited. No provision is made for exceptional cases. We agree that the act is to be liberally construed, but neither the deputy commissioner nor the courts have the power to legislate; and nothing short of legislation would make relief possible in a case like this." No case has been cited wherein the facts are so analogous to ours. The decision stands affirmed, notwithstanding the unusual manner of its affirmance, and it is highly persuasive here.

In the later case of Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225, few facts are stated (there being four claims), but it was held there where a claimant has sustained an accident, is aware of an injury, has received medical treatment and suffered pain, the statute begins to run, and that the word "injury" in the statute cannot be changed to "disability" or even to "compensable injury." That opinion goes further than our Missouri cases, for they have interpreted the word "injury" in our statute to mean "compensable injury." The three dissenting Judges in Pillsbury thought that it should be so interpreted. We mention this case primarily to show that the doctrine of Kobilkin, supra, has not been upset, as Mr. Larson apparently thought that it should (and would) be.

Respondents cite cases from several states as supposedly construing "injury" limitation statutes. Most of these statutes differ from ours and we see no point in discussing the individual cases. Suffice it to say that, generally, they appear to enforce rather strictly the provisions of limitation statutes in which the period of limitation runs from the date of injury.

Claimant's counsel cite the cases of Kostron v. American Packing Co., 227 Mo.App. 34, 45 S.W.2d 871; Ford v. American Brake Shoe Co., Mo.App., 252 S.W.2d 649; Webb v. Consumers Co-Op. Ass'n, 171 Neb. 758, 107 N.W.2d 737; and Hayes v. Detroit Steel Casting Co., 328 Mich. 609, 44 N.W.2d 190. In Kostron, it appears that the claimant did not really discontinue his work following the accident, although beginning some days thereafter he was treated by a doctor four or five times for an apparent muscular strain in his back and side, but

was permitted to continue working. Four months after the accident a sudden disability developed and it was found that there had been a tearing of certain muscles and a nerve. The Court simply held that under these facts no compensable injury was reasonably discoverable until the later date, so that the claim was filed in time. The case states no principle contrary to those Missouri cases which we have discussed.

In Ford, supra, the claim was for an occupational disease. The Court (and the Commission) found, on controverted evidence and as a fact, that the claim had been filed within the required time after the onset of the disease. The Court recognized the rules already stated, and merely held that the claim had been filed within one year from the time when it had become "reasonably discoverable and apparent" that the disease had produced a compensable disability, and that there was sufficient competent evidence to support a finding that the claim was not barred. The two cases just discussed, decided as they were on fact issues from wholly different evidence, could in no event be controlling here, nor were they controlling on the Court of Appeals.

The Nebraska case of Webb v. Consumers Co-Op. Ass'n, supra, is somewhat closer on the facts to the present case; it appears that the claimant sustained an injury by accident which was considered to be a "lumbo-sacral sprain with lacerations of ligaments"; that claimant worked a few days, after which he was treated by a physician for a "few weeks" during which time he was apparently not working. After returning to work he suffered three additional nonaccidental sprains, was hospitalized twice, and was, at least once, paid compensation. After the last such sprain a herniated disc was discovered, this being approximately twenty months after the original accident. From that operation a permanent partial disability resulted which, it was claimed, resulted from the original accident. On a defense of limitations, the sole ruling was: "The rule as to latent disease or disability is as follows: 'An em-

ployee, sustaining an accidental injury arising out of and in the course of his employment, will not be denied compensation for failure to give notice of claim within six months or to commence his action within one year from the date of the accident, when it appears from the evidence that the injury was latent and did not result in compensable disability until after the expiration of the time for giving notice of claim and commencing action, provided notice is given and action commenced within the statutory period after the employee has knowledge that the accident has caused a compensable disability.'" We fail to see how it could reasonably have been said that claimant there had suffered no compensable disability prior to the discovery of the disc injury, but that might be regarded as a question of fact. If the Court meant merely to say that the statute did not begin to run until a compensable injury was reasonably discoverable, then it goes no further than do our cases; if it meant more (and we are not at all sure), then we decline to follow the opinion.

The Michigan Statute on the subject, Michigan Stat.Ann.1960, Ch. 150, § 17.165 is so wholly different from ours that there would be no point in discussing the Hayes case, supra.

█ In our case the claimant suffered one accidental injury to her lower back. Substantial and disabling effects were immediately apparent. She was hospitalized and treated, compensation and medical expenses were paid, and she wore a brace for approximately three months. The reference to an apparent "sprain" in the report of accident can make no difference in our conclusions, even if it be considered as a proper part of the record. It cannot well be denied that claimant had then suffered a discoverable, compensable injury within the meaning of the Missouri authorities, and the fact that the maximum disability was delayed is not controlling. We are not persuaded that our rule should be changed, on the authority of Mr. Larson or otherwise.

If the legislature wishes to inject exceptions into our statutes (as, perhaps, by liberalizing the provisions concerning "a change in condition," § 287.470), that is its prerogative. We certainly may not do so, and we are convinced that any change in our rule would introduce a very considerable element of confusion into the administration of our Workmen's Compensation Law.

Moreover, the fixing of the date when the existence of a compensable injury is reasonably discoverable is, in large part at least, a question of fact. Several Missouri cases have so held. The referee and the Commission have found here, on substantial and competent evidence, that such date was more than one year prior to the filing of the claim; and it is also apparent that the Commission regarded, and found, that claimant's injury was one single injury. We should not substitute our judgment for that of the Commission.

The judgment of the Circuit Court is affirmed. It is so ordered.

All concur.

HENLEY, J., not sitting.